# IN THE COURT OF APPEALS OF IOWA

No. 22-0352
Filed May 11, 2022

IN THE INTEREST OF C.H.,
Minor Child,

B.W., Father,
        Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A father appeals the termination of his parental rights to a child. **AFFIRMED.**

Cory Goldensoph, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Kim Opatz of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals the termination of his parental rights to a child born in 2020. He contends the State failed to prove the child could not be returned to his custody pursuant to Iowa Code section 232.116(1)(h) (2020).

The department of human services intervened in connection with the mother's use of methamphetamine while caring for her older child. The mother also tested positive for methamphetamine and marijuana while pregnant with this child. On his birth, the child had marijuana in his system.

The State filed a child-in-need-of-assistance petition. The parents stipulated to the child's adjudication as a child in need of assistance. The department sought his temporary removal from parental custody based on the mother's disclosure that she relapsed on methamphetamine and the father's "extensive domestic violence history," including "an active no contact order" protecting the mother. The district court ordered the child's removal, and the department placed him with his maternal grandfather. The child remained with the grandfather through the termination hearing—a total of seventeen months.

In terminating the father's parental rights, the district court stated:

> [The father] has not demonstrated that he can provide a safe and stable home for [the child] that is free from domestic violence. He has a long history of violent and unhealthy relationships. The most recent incident occurred in February 2021 and resulted in his being returned to federal prison, rather than being able to remain in the community to work on reunification with his son. [The father] shows little insight into the negative impact such violence within the home has on the children in the home. He also shows little respect for court orders, as his continued violation of protective orders demonstrates. After the February 2021 criminal charge, a protective order was issued for the protection of the alleged victim in that matter. Then, on two days in April 2021, while in custody in the Linn County Jail, [the father] made 61 recorded phone calls to the subject of the

protective order. The contempt charges were ultimately dismissed as part of a plea bargain wherein he pled guilty to the underlying domestic assault, but the incident serves as a good illustration of the level of aggressiveness and anger [the father] is prone to displaying. These same violent and controlling behaviors resulted in the termination of his rights to [another son] and, now over a decade later, the same troubling issues are still present. [The child] should not be required to wait longer for permanency on the chance that [the father] has finally made long-lasting changes which would allow him to provide a safe, stable, violence free home for [the child].

The father contends the court should not have based "its decision on events . . . that occurred a year previous to termination of parental rights." But reliance on a parent's history of problematic conduct is entirely appropriate. *See In re J.H.*, 952 N.W.2d 157, 167 (Iowa 2020) (declining to ignore the father's "history of inadequate parenting"). The department reported that "[s]ix different women on ten occas[ ]ions . . . filed a petition for relief from domestic abuse from 2009-2021." Before the 2021 assault, the criminal court ordered the father to complete a batterer's education program. He did not participate in any individual therapy outside the program.

Following the 2021 assault, the father served five months in prison. On his release, the department recommended individual therapy to learn how to have a "healthy non-violent relationship." The father conceded he only attended "[o]ff and on." He stopped participating several months before the termination hearing, and he only reinitiated services two weeks before the hearing. While he claimed lack of insurance prevented regular attendance, the department employee overseeing the case informed him of a sliding fee program and noted that he failed to follow up. At the time of the termination hearing, the father had active no-contact orders

with two women, one of them the child's mother.  The caseworker opined that the father's "anger and aggression" precluded reunification with the father.

On our de novo review, we conclude the State proved the child could not be returned to the father's custody as required by Iowa Code section 232.116(1)(h)(4).  We affirm the termination of the father's parental rights to the child.

**AFFIRMED.**